[Civ. No. 11815.   Second Appellate District, Division Two.—September 8, 1938.]

MARIE HEROUX, Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY (a Corporation) et al., Appellants.

Robert Brennan, Leo E. Sievert and H. K. Lockwood for Appellants.

Russell H. Pray, Mason & Windham, Henry F. Walker and Roy J. Brown for Respondent.

McCOMB, J.—Defendants appeal from a judgment in favor of plaintiff after trial before a jury in an action to recover damages for personal injuries suffered in a collision between an automobile and locomotive.

(See illustration [page 403] for the photograph of the scene where the accident hereinafter described occurred.)

Viewing the evidence most favorable to plaintiff (respondent) the material facts are:

January 3, 1937, about 3 A. M., defendant corporation was operating a steam train with defendant Alverson as engineer. This train, which consisted of a locomotive and tender, two box cars and a caboose, was moving about 25 miles per hour in a northerly direction on the track just south of the point where the right of way crosses L Street in the Wilmington district of the city of Los Angeles. L Street at this point runs east and west.

The house just west of Hyatt Street and south of L Street, which is marked A in the above picture, is 205 feet west of the center of the railroad tracks of the defendant Atchison, Topeka & Santa Fe Railway Company, which run north and south along a line indicated by the figures 1 and 2.

It is 181½ feet from the south curb line of L Street to the house marked B in the above picture. All of the fences and other structures between the south curb line of L Street and the house marked B are located east of the railroad tracks. There is a standard cross-arm railroad sign located at the point marked 1, which is 13 feet east of the center line of the railroad tracks. This cross-arm sign is approximately 12 feet high and the cross-arms are approximately 8 feet long con-

PHOTOGRAPH OF THE SCENE WHERE THE ACCIDENT OCCURRED

sisting of boards 1 inch by 6 inches in size with the letters in the sign "railroad crossing" about 6 inches in size. The locomotive being operated by defendants was equipped with:

(a) An automatic bell which had been turned on at the Wilmington pier and continued to operate automatically thereafter until subsequent to the accident herein described.

(b) A headlight consisting of a 250-watt bulb with a funnel-shaped reflector which threw a beam of light 800 feet in advance of the locomotive. The rays of the beam from the headlight extended approximately 50 feet on each side of the track.

(c) A steam whistle which was sounded when the train was 200 feet south of the crossing by the giving of two long and two short blasts.

Upon the caboose there was a yellow sidelight visible to the west of the train.

When the pilot of the locomotive was approximately 100 feet south of the crossing the fireman, looking from the left window of the engine observed an automobile, which was being operated by plaintiff, approximately 300 feet west of the crossing and traveling in an easterly direction on L Street between 20 and 25 miles per hour. He forthwith told the engineer that an automobile was approaching. The engineer then blew the whistle. Immediately thereafter the fireman yelled, "Hold her" (meaning apply the emergency brakes), which was instantly done by the engineer.

It was a clear night and plaintiff, who had all of the windows in her car closed except the right-hand wind wing, which was open about an inch, was looking straight ahead through the windshield at all times prior to the accident while she was traveling east on L Street. She did not notice the train until she was about 12 feet west of the crossing, at which time she heard the whistle blow and turned sharply to the left. The engine struck the right, front wheel of her car and carried the automobile about 20 feet north of the north side of L Street.

Plaintiff had passed over this crossing on two previous occasions, once about ten days before the accident and on another occasion about three weeks before, at which times she knew of the location of the railroad track. As a result of the accident plaintiff received serious, personal injuries.

These are the questions necessary for us to determine:

*First: Was plaintiff contributorily negligent as a matter of law, in view of the facts stated above?*

*Second: Was the doctrine of last clear chance applicable under the foregoing statement of facts?*

The first question must be answered in the affirmative. ■ It is the settled law of this jurisdiction that, if the physical facts shown by undisputed evidence raise the inevitable inference that a person approaching a railroad crossing did not look or listen or that, having looked or listened, he endeavored to cross immediately in front of a rapidly approaching train which was plainly open to view, he is as a matter of law guilty of contributory negligence. (*Guyer* v. *Pacific Electric Ry. Co.*, 24 Cal. App. (2d) 499, 502 [75 Pac. (2d) 550].)

In *Young* v. *Southern Pac. Co.*, 189 Cal. 746, our Supreme Court thus states the rule at page 754 [210 Pac. 262]:

"And a person who attempts, regardless of warnings, to cross in front of a moving train, even though he be apparently in a condition of mental abstraction and consequently indifferent to the peril of his situation, is nevertheless negligent."

■ Applying the foregoing rule to the facts in the instant case, it is evident from the undisputed physical facts that plaintiff had an unobstructed view of defendant's train as it approached the intersection and that either she did not look or listen or, having looked, failed to heed the rapidly approaching train and endeavored to cross immediately in front of it. In either event she was contributorily negligent as a matter of law.

It is hard to conceive of a clearer case of contributory negligence than that which the facts here disclose.

■ The second question must also be answered in the negative. The law is settled in California that the doctrine of last clear chance is inapplicable to a case unless there is evidence from which it may be found that (1) defendant was aware of plaintiff's dangerous situation and realized or should have realized plaintiff's inability to escape therefrom, and (2) defendant then had a clear chance to avoid injuring plaintiff by the exercise of ordinary care and failed to do so. (*Guyer*

v. *Pacific Electric Ry. Co.*, 24 Cal. App. (2d) 499, 503 [75 Pac. (2d) 550].)

The uncontradicted testimony shows that the fireman on defendant railroad company's locomotive, immediately upon observing plaintiff's automobile, called the fact to the engineer's attention, who instantly blew the whistle and immediately thereafter applied the emergency brakes of the train. It is clear that he thus did all in his power to avoid the unfortunate accident. It is, therefore, evident that the elements of the doctrine of last clear chance set forth in paragraph (2) above are absent from this case. Defendants neither had a clear chance to avoid injuring plaintiff subsequent to learning her position of danger nor did they fail to avoid the accident by not using ordinary care.

The conclusions which we have reached render it unnecessary for us to consider the other points discussed by counsel.

For the foregoing reasons the judgment is reversed.

Crail, P. J., and Wood, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 7, 1938. Curtis, J., voted for a hearing.